# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JUDGE BAER

| | |
|---|---|
| **SMART TRIKE, MNF, PTE, LTD.** | Case No.: 11 CIV 8198 |
| **Plaintiff,** | |
| -against- | COMPLAINT & JURY DEMAND |
| **SMART TRIKE, LLC, ROBERT KRAMER and JOSEPH JANOWSKI,** | RECEIVED NOV 14 2011 U.S.C.S.D.N.Y. CASHIERS |
| **Defendants.** | |

Plaintiff, Smart Trike, MNF, PTE, Ltd. (the "Company" or "Smart Trike") by its attorneys, Sokol, Behot & Fiorenzo, Esqs., as and for its Complaint hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for declaratory judgment, injunctive relief, as well as other relief arising under the Trademark Laws of the United States, 15 U.S.C. § 1051, et seq. (the "Lanham Act") and the common law and statutes of the State of New York.

2.     Plaintiff, Smart Trike, is in the business of manufacturing and distributing smart and innovative children's toys, including various tricycles which are sold and distributed under the Company's exclusive logo and trademark *"Smart Trike"* or *"SmarTrike"*. The Company is a leader in the ride-on toy industry. Consumers recognize the Company's trademarks and logos to identify high quality children's products merchandised or manufactured by, or under licenses from, Smart Trike (collectively referred to as the "Trademarks" or "Marks").

3.      On or about March 2009, the Company and Defendants entered into a certain Representation and Agency Agreement (the "Agreement"), renewed on October 8, 2010, which obligated the Defendants as exclusive representatives to perform various activities to market and sell Plaintiff's products which were subject to the Trademarks.  As set forth below, Defendants have utterly failed and refused to perform their obligations; fraudulently induced the execution of the Agreement; effectively abandoned their performance; and have converted funds payable to Plaintiff for the sale of the Plaintiff's products, to their own use.

4.      As a result of Defendants' egregious defaults and wrongful conduct, Plaintiff has been compelled to terminate the Agreement, thus precluding Defendants from acting as agents or representatives in the sale of their products.

## THE PARTIES

5.      Plaintiff, Smart Trike, is a limited liability company organized and existing under the laws of Singapore, which conducts business on a worldwide basis, including the United States and Canada.

6.      Defendant, Smart Trike, LLC, ("STLLC") is a limited liability company organized and existing under the laws of the State of New Jersey, with its principle place of business located at 32 Piermont, Suite #7, Cresskill, New Jersey  07626.

7.      Defendant, Robert Kramer, ("Kramer") is a principal owner of STLLC and is also a Guarantor of the obligations of STLLC under the Agreement.  Upon information and belief, Kramer resides at 52 Churchill Road, Cresskill, New Jersey  07626.

8.      Defendant, Joseph Janowski ("Janowski") is a principal owner of STLLC and is also a Guarantor of the obligations of STLLC under the Agreement.  Upon information and belief, Janowski resides at 49 Adams Drive, Cresskill, New Jersey  07626.

## JURISDICTION AND VENUE

9.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1338, 15 U.S.C. § 1125, and 28 U.S.C. § 1367.

10.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this judicial District, and Defendants are subject to personal jurisdiction in this judicial District by, among other things, the express provisions of the Agreement by which the parties consent to jurisdiction in the State of New York.

## FACTS COMMON TO ALL COUNTS

### A. Background of Smart Trike

11.     Since 2004, Smart Trike has been in the business of manufacturing and distributing smart and innovative children's toys, including various tricycles which have been recipients of a variety of awards in the ride-on toy industry.

12.     Smart Trike is an industry leader in the ride-on toy industry, with an international presence at various major toy retailers of its products.

### B. Trademarks Owned by Smart Trike

13.     Smart Trike has been in business since 2004.  During this time, it has established an extraordinary reputation for quality and innovative products and developed substantial good will related to the products and service it offers.  Smart Trike has spent substantial sums of money and significant effort and time in the research, development, promotion and exploitation of its products and services, as well as the Trademarks and service marks under which its products and services are marketed and sold.

14.     Smart Trike has a variety of Trademarks which employ the term *"Smart Trike Smart."*

C.      **The Representation and Agency Agreement**

15.     In about 2009, Smart Trikes, whose brand and product range was already very well established in Europe and other countries around the world, sought to market its products to customers in the United States and Canada in the mass and domestic markets.  At that time, Smart Trike had many years of experience selling its products to large retailers, such as Toys "R" Us, Argos, Mothercare and many others.

16.     In March 2009, Smart Trike and the Defendant, STLLC, entered into a written Agreement which provided, among other things, for STLLC to be the sole and exclusive representative of Smart Trike in the United States and Canada with regard to the products manufactured by Smart Trike.  A true copy of that Agreement is annexed hereto as Exhibit A.

17.     In order to induce Smart Trike to execute the Agreement, Defendants, Kramer and Janowski, made the following representations and promises:

- That Kramer would be actively engaged in the marketing of Smart Trike products.

- That Kramer would be available, and had the available time, to devote to the business of being the exclusive representative of Smart Trike in the United States and Canada and that he would invest most of his time towards that end.

- That Smart Trike would solicit other mass market retailers to grow the business, as the Toys "R" Us exclusive agreement was set to expire in December 2011.

- That Defendants would provide a forecast plan, monthly reporting and would assist in collection efforts from customers to ensure prompt payment for goods sold.

18.    The Agreement, in §2B, obligated Defendants to reach a "minimum annual turnover" of $9 million for the calendar year 2011.

19.    The Agreement, in §3, set forth various duties and responsibilities of Defendants, which included the following obligations:

A.    The duty to meet with customers on a regular basis.

B.    The duty to submit and maintain a forecast plan detailed by customer, product and price for each calendar year.

C.    Assisting in collection efforts from customers to whom goods were sold on behalf of Smart Trike.

D.    Maintaining serviceability and helplines and spare parts service for the Company.

E.    The duty to report progress with each major customer or group of customers on a monthly basis.

F.    The duty to establish a mechanism for a weekly report to be provided to Smart Trike.

20.    The Agreement, in §4, confirmed that the Company "holds the exclusive right and title to the logo and Trademark "Smart Trike" and further confirmed that Defendants were provided with a "limited right and license to use the Trademark during the term of this Agreement and solely to the extent necessary for the sale, marketing and servicing of the Products and the Territory." The Agreement further confirmed the understanding of the parties

that Defendants were permitted to use the name "Smart Trike, LLC" ancillary to the limited right and license to use the Trademark only so long as the Agreement was in effect.

21.    On or about October 31, 2010, Defendants, Kramer and Janowski, executed a Personal Guaranty pursuant to which they guaranteed the performance of various obligations of STLLC under the Agreement:

> In the event of a default by Smart Trike, LLC, in the performance of its payment obligations under the Agreement, the Guarantors guarantee, at the Guarantors' option, either (a) payment of the purchase price due on merchandise received by Smart Trike, LLC subject to any authorized deductions within 120 days from the Company's presentment of invoices to Smart Trike, LLC. . . or (b) the return of the invoiced merchandise in the original packaging by commercially reasonable means within that same time frame. .    . The Guarantors also guarantee Smart Trike, LLC's reimbursement of the Company for the Financed Expenses due from Smart Trike, LLC as provided in the section of the Agreement entitled "Expenses" (Section 7)."

A true copy of the Personal Guaranty is annexed hereto as Exhibit B.

22.    The Guaranty also provides that in the event payment is not made when due, the entire outstanding amount shall become immediately due and payable and that in the event of a Default "the undersigned agree to pay all reasonable attorney's fees and costs of collection."

**D.    Breach of the Agreement and Abandonment of Its Obligations by STLLC**

23.    Defendants have materially and substantially breached the Agreement, have failed and refused to remit payments due to Smart Trike, have converted customer funds paid to them which were required to be remitted to Smart Trike and have abandoned performance of their obligations under the Agreement. That conduct includes, but is not limited to, the following:

A.    Despite being the Company's representative for collection of invoices with certain customers with an obligation to tender such payments to the Company upon receipt, Defendants have failed and refused to remit back to the Company the sum of at

least $1,053,664.86 due under the Agreement.  This amount includes (1) monies directly paid to Defendants by Toys "R" Us, which payments were required to be remitted to Plaintiff pursuant to §9 of the Agreement within five (5) days of the receipt of the Toys "R" Us payments; (2) Other open invoices; and (3) a loan of $121,163 owed to Smart Trike.  When Smart Trike inquired as to the status of the Toys "R" Us payments, Defendants repeatedly made knowingly false statements that the money had not been paid when, in fact, it had been received and was required by the Agreement to be remitted by the Defendants to Smart Trike.

      B.      Defendants failed to fulfill, and effectively abandoned, their marketing obligations under the Agreement.  Among other things, they have failed to meet with direct customers on a regular basis, have failed to appear at critical exhibitions damaging the reputation of the Company; failed to participate in the ABC 2011 Fair and have submitted no plans for participation in the Javits Center 2012 Fair.

      C.      Defendants failed to submit and maintain a forecast plan detailed by customer and product as required by under the Agreement.

      D.      Defendants failed to comply with monthly reporting requirements by detailing the progress with each major customer or group of customers as required by the Agreement.

      E.      In addition to failing to make payment of pending invoices, Defendants have placed additional orders in the amount of $230,390 for goods which Plaintiff has manufactured and produced, but which could not be delivered, and are still stored in the factory because of Defendants' inability or refusal to pay for orders already filled.

F.    Defendants failed to fulfill its customer service responsibilities for help line calls and spare part services.

G.    Defendants failed to meet the required target turnover pursuant to §2 of the Agreement.

24.    As a result of these material and substantial breaches and effective abandonment of the Agreement, on November 9, 2011, Defendants were served with a Notice of Termination of the Agreement.

## FIRST COUNT
### [Breach of Contract]

25.    Plaintiff repeats and reiterates each and every allegation set forth in Paragraphs 1 through 24 as if set forth herein verbatim and at length.

26.    As set forth above, the Agreement granted to STLLC the ability to be the sole and exclusive representative of Smart Trike in the United States and Canada, which right was dependent upon Defendants' performance of the covenants under the Agreement which imposed various duties and obligations which were a basic premise to the continued existence of the contractual relationship.

27.    Defendants materially and substantially breached their duties and obligations under the Agreement to such an extent that they effectively abandoned performance.

28.    As a result of the material and substantial breach of the Agreement by STLLC, Plaintiff has suffered substantial harm and damage.

## SECOND COUNT
### [Declaratory Judgment of Termination of Agreement]

29.    Plaintiff repeats and reiterates each and every allegation set forth in Paragraphs 1 through 28 as if set forth herein verbatim and at length.

30.    As set forth above, by virtue of Defendants' material and substantial breach of the Agreement, abandonment of performance, breach of duty and conversion of funds properly due to Plaintiff, Smart Trike was left with no alternative but to terminate the Agreement.

31.    Upon information and belief, Defendant, STLLC, has disputed that its rights under the Agreement have been terminated.

32.    Upon termination of the Agreement, Defendants are obligated to:

    A.    Cease and desist use of the Trademarks of the Company;

    B.    Amend its name so as to cease use of the Trademark *"Smart Trike"* and return all Trademark materials to the Company;

    C.    Cease holding itself out to the public as the agent or representative of Plaintiff;

    D.    Be precluded for a period of eighteen (18) months from selling or distributing any products similar to those manufactured by Plaintiff, pursuant to §10 of the Agreement.

    E.    Deliver to the Company all products being held in stock by STLLC in its warehouses, or otherwise.

33.    Upon information and belief, there exists an actual controversy between Plaintiff and Defendants as to whether the Agreement continues in effect or has been terminated.

34.    Plaintiff is entitled to a declaration that the Agreement has been terminated and that Defendants are obligated to comply with the post-termination requirements in the Agreement.

## THIRD COUNT
### [Fraud]

35.    Plaintiff repeats and reiterates each and every allegation set forth in Paragraphs 1 through 34 as if set forth herein verbatim and at length.

36.     In or about October, 2010, Defendants, STLLC, Kramer and Janowski, sought to enter into an agreement with Smart Trike pursuant to which said Defendants would act as the exclusive representative and agent for Smart Trike in the United States and Canada.

37.     During the course of solicitation and negotiation of the Agreement, and on the date of the Agreement and thereafter, Kramer and Janowski, both in their individual capacity and on behalf of STLLC, did falsely and with the intent to deceive and defraud Smart Trike, make numerous representations including, but not limited to the following:

A.     That they had sufficient time, and would make themselves available, to devote to the business of being the exclusive representative of Smart Trike and that Kramer would invest most of his time towards that goal and purpose in order to expand the market in the United States and Canada for Smart Trike products.

B.     That Kramer would be actively engaged in the marketing of Smart Trike products.

C.     That Kramer and his company, STLLC, would solicit other mass market retailers to grow the business, as the Toys "R" Us exclusive agreement as to Smart Trike products was set to expire in 2012.

D.     That Defendants would provide a forecast plan, monthly reporting and weekly reporting in order to keep Plaintiff abreast of their efforts as exclusive representative.

E.     That Defendants would, in certain instances, collect amounts on behalf of Smart Trike due to customer sales and that when they did so they would promptly, within no later than five (5) days, remit such sums to Smart Trike.

F.     That as a critical component of their marketing efforts they would attend certain key conventions, including the New York Convention at the Javits Center and the ABC

LV Convention, with Kramer representing, because of the critical nature of those conventions, that he would attend in order to market the products directly with customers.

   G. That they had not received payments from Toys "R" Us which they were contractually obligated to remit within five (5) days when, in fact, such funds were received and used by Defendants.

  38. The aforesaid representations made by Kramer and Janowski were false, and they knew they were false in that, without limitation, they knew that they did not intend to provide the required marketing efforts and, instead, engaged in what is tantamount to a "bait and switch" scam by inducing execution of the Agreement and refusing to honor the representations and commitments that they made.

  39. As a direct and proximate result of the misrepresentations set forth above, Plaintiff has suffered substantial damages, including loss of profits and loss of its reputation and good will.

  40. Defendants, Kramer and Janowski, as the principals of STLLC, directed, encouraged and were responsible for the wrongful conduct set forth above.

## FOURTH COUNT
### [Breach of Fiduciary Duty]

  41. Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 40 as if set forth herein verbatim and at length.

  42. As a result of STLLC's status as agent for Plaintiff, and the status of Kramer and Janowski as the members who controlled and directed that entity, the law imposes upon the Defendants a duty of loyalty and due care which requires the utmost fidelity, loyalty and honesty in their dealings towards Smart Trike.

43.     As a result of the conduct set forth in detail above, said Defendants have engaged in a willful breach of their fiduciary duty to their principle, Plaintiff, by the actions detailed above.

## FIFTH COUNT
### [Trademark Infringement in Violation of Lanham Act]

44.     Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 43 as if set forth herein verbatim and at length.

45.     Defendants' continued use of Plaintiff's Trademark "Smart Trike" constitutes infringement in violation of the Lanham Act.

46.     Defendants' unauthorized use of the Trademark is likely to cause confusion, mistake and deception as to the source, origin, sponsorship, approval, endorsement or affiliation of Defendants' products and services.

47.     Defendants' wrongful conduct has deprived Smart Trike of, among other things, the right to control the reputation and good will associated with its *Smart Trike* Trademark.

48.     Unless Defendants are enjoined from engaging in their wrongful conduct, Smart Trike will suffer further irreparable injury and harm for which it has no adequate remedy at law.

## SIXTH COUNT
### [Unfair Competition and False Designation of Origin in Violation of the Lanham Act]

49.     Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 48 as if set forth herein verbatim and at length.

50.     Defendants' conduct, as described above, constitutes unfair competition and false designation of origin, in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

51.     Smart Trike owns a valid and enforceable common law *Smart Trike* Trademark in connection with the marketing and sale of its products and this market has been valid and enforceable for a substantial period of time.

52.     Defendants' unauthorized use of the Trademark, *Smart Trike*, is likely to cause confusion, mistake and deception as to the affiliation, connection and/or association of Defendants' services.

53.     Defendants' wrongful conduct has deprived Plaintiff of, among other things, the right to control the reputation and good will associated with its Trademark.

54.     Unless Defendants are enjoined from engaging in their wrongful conduct, Plaintiff will suffer further irreparable injury and harm for which it has no adequate remedy at law.

**SEVENTH COUNT**
**[Trademark Infringement, Unfair Business Practices and Unfair Competition
in Violation of New York Law]**

55.     Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 54 as if set forth herein verbatim and at length.

56.     Defendants' conduct, described above, constitutes Trademark infringement, unfair competition and deceptive business practices in violation of the Statutes and common laws of the State of New York, including New York General Business Law §349.

57.     Defendants' unauthorized use of Plaintiff's Trademark is likely to cause confusion, mistake and deception as to the affiliation, connection or association of Defendants' services.

58.     As a result of Defendant's wrongful conduct, Plaintiff is deprived of, among other things, the right to control the reputation and good will associated with its Trademark.

59.     Defendants' wrongful acts are in violation of New York Law and are malicious, willful and deliberate.

60.     Unless Defendants are restrained by the Court, Plaintiff will continue to suffer irreparable harm and injury for which it has no adequate remedy at law.

## EIGHTH COUNT
### [Conversion]

61.     Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 60 as if set forth herein verbatim and at length.

62.     Defendants, as agent of Plaintiff, have received payments for the sale of products from customers which they are obligated to remit to Plaintiff.

63.     Defendants have wrongfully exercised dominion and control over said funds that are the property of Plaintiff.

64.     The actions of Defendants constitute a wrongful conversion of Plaintiff's property.

65.     The actions of Defendants in converting such funds are malicious, willful and intentional.

## NINTH COUNT
### [Liability on the Guaranty]

66.     Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1 through 65 as if set forth herein verbatim and at length.

67.     As set forth above, the Guaranty imposes personal liability against Defendants, Kramer and Janowski, for defaults of Defendant, STLLC, under the Agreement.

68.     Under the Guaranty, Defendants, Kramer and Janowski, are responsible for payment of all attorney's fees and costs incurred arising from the default under the Agreement.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter Judgment for the following relief:

A.    An award of compensatory damages and an accounting of Defendants' profits, including any statutory enhancements or enhancements on account of the willful nature of Defendants' acts;

B.    An award to Smart Trike of its costs and expenses, including reasonable attorney's fees, in bringing this action;

C.    A Declaratory Judgment that the Agreement has been terminated.

D.    An Order requiring Defendants to turn over to Plaintiff all amounts collected on behalf of the Company as a result of sales including, but not limited to, the Toys "R" Us funds.

E.    An Order requiring Defendants to take such actions to amend the Trade Name of "Smart Trike, LLC" so that all use or reference to the Trademark "Smart Trike" ceases to the Company's satisfaction.

F.    An Order requiring Defendants to deliver to the Company all Smart Trike products being held in stock by the Defendants at their warehouse, or otherwise.

G.    An Order requiring that Defendants deliver to Plaintiff all documentation and other materials in their possession related to any of Plaintiff's products.

H.    An Order requiring Defendants to furnish to Plaintiff all of its domestic customer contact information and terms and prices offered to each customer, and direct customers relating to all Smart Trike product sales.

I.    An Order restraining Defendant from selling or distributing any products similar to those manufactured by Plaintiff pursuant to §10 of the Agreement.

J.      An Order entering a preliminary and permanent injunction enjoining Defendants, their employees, agents, officers, directors, representatives, successors, affiliates, parents, subsidiaries, licensees and assigns, and all those in active concert or participation with them, from the following acts:

(i)      Using or attempting to use in any way (a) the name or Trademark, *Smart Trike*, or any other name, Trademark or designation which imitates or is confusingly similar to said name or Trademark and (b) any false description, representation or any other thing likely to cause confusion or mistake in the public mind, or deceive the public into the belief that Defendants, or their products or services, are connected or related to Smart Trike, or that Defendants' products or services come from or are approved or endorsed by Smart Trike; and

(ii)      Otherwise engaging in any acts, either directly or through other entities, of infringement, delusion, unfair competition, false designation of origin or unfair business practices;

K.      An Order requiring Defendants to withdraw any Trademark applications they may have filed at the request of Smart Trike as exclusive representative for Smart Trike in the United States.

L.      An award of punitive damages against Defendants for their intentional and malicious conduct.

M.      Such other and further relief as the Court deems just and proper.

16

Plaintiff respectfully requests a Jury Trial on all issues so triable.

Dated:   November 14, 2011
         New York, New York

                        Respectfully submitted,

                        **SOKOL, BEHOT & FIORENZO**
                        Attorneys for Plaintiff
                        Smart Trike, MNF PTE, Ltd.

By

                        Joseph B. Fiorenzo (JBF8663)
                        One Grand Central Place
                        60 East 42 Street, Suite #2527
                        New York, New York 10165
                        Tel:  (212) 661-2523
                        Fax:  (201) 488-2460
                        E-Mail: jbf@sbflawfirm.com

# Exhibit

# A

## Smart Trike – Representation and Agency Agreement

| Section 1: | |
|---|---|
| A: Agreement is made between: | Smart Trike MNF, PTE LTD. - "the **Company**" based in Singapore. |
| B: And | Smart Trike, LLC – "the **Representative**" based in Cresskill NJ ,USA |
| C: Type of agreement | Sole and exclusive representation and agency agreement – the Representative shall be the sole and exclusive representative and agent, in the Territory, for the Products. |
| D: Agreement Period | October 18th 2010 – December 31st, 2012. |
| E: Territory | USA and Canada |
| F: Products | All products manufactured from time to time by the Company. |
| Section 2:<br><br>A: Prices | • FOB China which determined by the Company, to establish twice a year (for Jan-June delivery and July-December delivery). Written notice of 90 days required in case of price change.<br>• The Company shall deliver to the Representative monthly reports of Sales, including calculations of the applicable Commission payable to Representative on account of such Sales.<br>• Products shall be sold under the terms and conditions defined by the Company.<br>• The Representative will not quote prices deviating from the Company's FOB China price list to customers, without prior written approval from the Company.<br>• Any breach of the Price section will be regarded as a material Breach. |
| B:<br>Target Turnover | In order to retain its exclusivity, the sales of sales shall be required to reach a minimum annual turnover, as detailed below by "LLC FORECAST" (hereafter: "LLC Forecast")<br><br>LLC forecast     (*PTE forecast – for reference*)<br>2010 -  $4 million    *$5 million*<br>2011 -  $9 million    *$15 million*<br>2012 – $12 million   *$25 million*<br>2013- $15 million    *$35 million*<br><br>Thereafter – 10% increase annually<br><br>Goal is to have 25% of the sales through the specialty and e-commerce; however the Representative shall have discretion to apply a different mixture of sales channels.<br>The representative needs to establish and support sales to the specialty market and "on-line" through Domestic Sales.<br><br>The Company will ensure sufficient capacity to support sales opportunities in the Territory and will continue to diligently develop additional Products to maintain its competitive market edge. This shall include, amongst others, the obligation of the Company to supply orders according to a maximum lead time of 75 days from the order date. |
| Section 3:<br><br>Representative Responsibilities | • Meetings with customers on a regular basis.<br>• To submit and maintain forecast plan detailed by customer/ product/ price for each calendar year.<br>• Aiming to bring 25% of sales through specialty and e-commerce channels<br>• Processing and managing annual advertising budget through the optimal channels.<br>• Controlling advertising activities reviewing customers' promotion & selling<br>• POS tracking |

|  | • Assistance in, but not responsibility for, collection efforts from customers, in case the Company encounters collection problems.<br>• Maintaining service ability for help line calls and spare part service. (spare parts to be provided free of charge by the Company)<br>• Monthly reporting detailing progress with each major customer or group of customers.<br>• Working mechanism will be established by both parties, to develop weekly report and call (participate by Robert or Seffi)<br><br>In order to secure Representative's obligations in this agreement, Representative hereby provides the Company with a personal guarantee, signed personally by Messrs Robert Kramer and Joseph Janowski. ( unlimited ) |
|---|---|
| **Section 4:**<br><br>A: Company's Intellectual Property Rights | The Company holds the exclusive right and title in the logo and trademark "*Smart Trike*".<br><br>The Company hereby grants Representative a limited right and license to use the Trademarks, during the term of this agreement and solely to the extent necessary for the sale, marketing and servicing of the Products in the Territory. In the framework of the above limited right and license, and subject to its terms and condition, Representative shall have the right to use the Trademarks in the Representative's name, "Smart Trike LLC".<br><br>Representative shall immediately inform the Company in writing of any infringement of the Trademark or other of the Company's Intellectual Property Rights, which comes to its knowledge. |
| B:<br>Confidentiality | Representative shall maintain, during the term of this agreement and after its expiration or termination for any reason, Company's confidential information in strict confidence, and shall not use such confidential Information in any way other than as necessary for the performance of this Agreement and on a "need to" basis. |
| **Section 5:**<br>Commission | For orders paid until August 31, 2010 the Representative shall be entitled to receive a Commission in an amount equal to 4%, and 3.5% for - Sales paid thereafter.<br>The Commission shall be paid on the last day of each quarter, based on receipt of payments from customers. |
| **Section 6:**<br>Customer service - Help line | The Representative shall maintain a customer help line service for all inquiries and requests for spare-parts, services and replacement.<br>Spare parts and replacements to be provided by the company to LLC free of charge. All other expenses to maintain this service are the responsibility of the Representative. |
| **Section 7:**<br>Expenses | The Company will be responsible for all charges related to the manufacturing and quality of the Products, including any customer charge backs, quality problems, liability issues, etc. The Company is also responsible to maintain all necessary insurances as shall be required to facilitate sales in the Territory, and bear all responsibilities for any expense or liability resulting from legal action taken against the Company and/or the Representative. The Company hereby indemnifies the Representative for any damage, liability and cost incurred due to the sales of the Products in the Territory, or due to the breach of this Agreement by the Company.<br><br>The representative should be responsible for expenses related to the domestic sales of products as follows:<br>• Warehousing and other logistic expenses of inventory (not including Toys |

SJ

R Us backup_
- Domestic sales selling expenses excluding advertising and PR

The Parties acknowledge that the Company has financed certain, limited expenses of the Representative until July 31 2010 (the "financed expenses") and shall continue to finance Representative's reasonable expenses until December 31, 2010 up to a maximum of $40,000 (the "additional Finance Expenses"). The Financed Expenses, less an amount of $20,000 which the Company shall bear and the additional finance expenses, will be reimbursed by the Representative starting January 1, 2011, on a quarterly payment basis equal to 25% of payable commission for that quarter.

| | |
|---|---|
| Section 8:<br>Exhibitions | Javits NY (Feb.) – in 2011 $20K to be paid by the Company to the Representative who shall be responsible for exhibition expenses. From 2012 100% paid by representative, provided that the Representative shall not bear any expenses that are not directly related to, or incurred by, the representative. The Company will continue to be responsible for any samples, sample shipment and/or changes in graphic design.<br><br>ABC LV (Oct.) – in 2010 exhibition costs to be paid by the Company. From 2011, 100% paid by Representative, provided that Representative shall have full discretion whether to participate or not. Graphics material shall be provided by the company<br><br>Fall Toy preview Dallas (Oct.) – at Company's expense for the duration of this Agreement . |
| Section 9:<br>Payment Terms | All previous Commissions and other payments due to the Representative shall be paid to the Representative in parallel to Representative payment for overdue invoices. No deductions will be made from the commissions due to the representative, other than those mentioned in section 7.<br><br>The Company will make the 2010 commission payments already due upon the signing of this agreement .Thereafter , commissions will be paid  at the end of the quarter, starting  December 31(thereafter, March 31, June 30 etc etc). Calculations are based on cash received for customer's paid invoices. The company will disclose all sales and cash receipts of all activities related to the Territory.<br><br>From January 2011, all expenses will be paid by the representative directly, unless expenses related to and/or approved by the Company.<br>In case the Representative collects amounts on behalf of the Company on account of Sales, such amounts shall be paid to the Company within 5 business days after receipt. |
| Section 10:<br>Non competing | The Representative is not allowed to sell/distribute any kind products similar to those manufactured by the Company for the duration of this Agreement and an additional 18 months after its termination. |
| Section 11:<br>Advertising Budget | Advertising Budget shall be 4% from projected annual turnover (based on price list, not including discounted special orders).<br>The Advertising Budget shall be managed by the Representative that will have to present a marketing plan for the allocated budget. All payments will be done directly by the Company. |
| Section 12 A:<br>Termination and continuity Terms | This agreement is valid for 2 years trial period, to enable both sides to check cooperation, review performance and reporting/communication to either side's satisfaction.<br>After 2 years, the company and representative will evaluate further cooperation and discuss/finalize a new contract in due course.<br>In case of termination - 6 (six) months prior written notice to the other party, with |

| | no further compensation to LLC, other than what is due. |
|---|---|
| Consequences of Termination or Expiration | Upon termination or expiration of this Agreement, all the following shall apply:<br><br>(a) Representative shall not be entitled to any indemnity, compensation, reimbursement or damages whatsoever arising out of, or in connection with, such termination or expiration;<br>(b) Representative shall cease immediately all use of the Trademarks as defined above. Without limiting the generality of the foregoing, the Representative shall amend its name and within 30 days from termination of expiration, so that all use of the Trademark "Smart Trike" is ceased, to the Company's satisfaction.<br>(c) All amounts owed by either party, notwithstanding any prior terms of sale, shall become payable by the end of the termination notice period.<br>(d) Representative shall immediately, and no later than thirty (30) days following the end of notice of termination or expiration, deliver to Company all Documentation and other materials related to the performance of this Agreement and/or to the Product.<br>(e) The Company will indemnify the representative from any damages and liabilities derived from its time as the Company's representative, including but not ,limited to any legal expenses.<br>(f) Both parties will conduct their business in good faith while allowing the other party to maintain and conduct its business at its will, and not withhold payments and/or reasonable marketing or other requests. |
| B: Applicable Law and Jurisdiction | This Agreement shall be governed by the laws of the State of New York without reference to its choice of law provisions. Any dispute shall be referred to the competent court in the State of New York. |
| No other agreements | This agreement cancels any previous agreement made between the parties |

In witness whereof, the parties hereto have caused this agreement to be executed on the:

__November_ 8 __, 2010
October

Smart Trike MNF, PTE LTD                Yoram Baron

Smart Trike LLC                      Robert Kramer

Smart Trike LLC                      Joseph Janowski

# Exhibit B

# PERSONAL GUARANTEE

GUARANTEE DATED AS OF OCTOBER 31, 2010 OF CERTAIN OBLIGATIONS OF SMART TRIKE LLC BY ROBERT KRAMER AND JOSEPH JANOWSKI

In consideration of the "Smart Trike – Representation and Agency Agreement" made by and between Smart Trike MNF, PTE LTD. (the "Company") and Smart Trike LLC (copy annexed as Appendix A and hereinafter referred to as the "Agreement"), Robert Kramer and Joseph Janowski (the "Guarantors") hereby make this guarantee for the benefit of Smart Trike MNF, PTE LTD.

In the event of a default by Smart Trike LLC in the performance of its payment obligations under the Agreement, the Guarantors guarantee, at the Guarantors' option, either (a) the payment of the purchase price due on merchandise received by Smart Trike LLC, subject to any authorized deductions, within 120 days from the Company's presentment of invoices to Smart Trike LLC (Not including Recliner invoice 40015, AIO invoice 40032 and Zoo invoice 10150, which will be paid after sale or before submitting new orders from these styles), or (b) the return of the invoiced merchandise in the original packaging by commercial reasonably means within that same timeframe. Terms for such return are FOB the Smart Trike LLC warehouse.  The Guarantors also guarantee Smart Trike LLC's reimbursement of the Company for the Financed Expenses due from Smart Trike LLC as provided in the section of the Agreement entitled "Expenses" (section 7).

The Guarantors' collective liability shall be for the full amounts guaranteed, but the liability of each individual Guarantor shall be limited to one-half of the amounts guaranteed.

In the event any guaranteed payment is not made when due, the entire outstanding amount shall be immediately due and payable at the option of the Company. In the event of default, the undersigned agree to pay all reasonable attorney's fees and costs of collection.

In the event that the Agreement expires or is terminated as provided therein, the Guarantors guarantee, at Guarantors' option, either (a) the payment within 90 days of all outstanding amounts due the Company for merchandise received by Smart Trike LLC, or (b) the return of the invoiced merchandise in the original packaging by commercial reasonably means within that same time frame. Except as thus expressly provided, all obligations under this Guarantee shall end on such date as Smart Trike confirms in writing or by email that there are no outstanding debts subject to this guarantee, which written confirmation shall not be unreasonably withheld or delayed.

This Agreement shall be governed by the laws of the State of Israel and any dispute shall be tried in the District court of Tel Aviv.

Smart Trike MNF, PTE LTD, by Yoram Bar On

Robert Kramer                    10/8/2010                    Joseph Janowski